**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| HOWARD M. GURIDI, | No. C 07-00564 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket Nos. 11, 12] |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## REQUEST BEFORE THE COURT

Before the Court is plaintiff Howard M. Guridi's Motion for Summary Judgment (the "Motion") [Docket No. 11], defendant Commissioner of the Social Security Administration's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment (the "Cross-Motion") [Docket No. 12], and Guridi's Reply Memorandum (the "Reply") [Docket No. 13]. Guridi appeals defendant's decision he is neither disabled nor eligible for supplemental security income benefits under Subchapters II or XVI, respectively, of the Social Security Act, 42 U.S.C. § 1381 *et seq.*[1]  For the reasons discussed below, the Court finds there is substantial evidence to support defendant's determination that Guridi's drug and alcohol abuse was material to a finding of disability, his panic disorder was not disabling, and that he was not fully credible.  Accordingly, the Court DENIES plaintiff's Motion, GRANTS defendant's Cross-Motion, and AFFIRMS defendant's RFC determination.

## BACKGROUND

Guridi applied for Disability Insurance Benefits and Supplemental Security Income in March 2004, alleging disability since January 6, 2002 (AR 15, 54-57, 692-94).  Guridi's applications were denied initially and upon reconsideration (AR 15, 34-38, 44-49, 696-701), and he requested a

---

[1]  Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, governs old age, survivors, and disability insurance (OASDI) benefits, while subchapter XVI, 42 U.S.C. § 1381 *et seq.*, governs Supplemental Security Income for the aged, blind, and disabled.

1  hearing before an ALJ (AR 50). On April 27, 2006, a hearing was held before the ALJ at which
2  Guridi was represented by his current counsel and testified on his own behalf; also testifying were
3  medical experts, Sukhdev Khangura, M.D., and John Dusay, M.D., and vocational expert, Malcolm
4  Brodzinsky (AR 750- 823). On May 24, 2006, the ALJ issued a decision in which she found that
5  Guridi was not disabled under the terms of the Social Security Act (AR 15-25). The ALJ's decision
6  became the final decision of the Commissioner when the Appeals Council denied Guridi's request
7  for review (AR 5-8). Guridi commenced this action for judicial review pursuant to 42 U.S.C.
8  §§ 405(g), 1383(c).

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), jurisdiction is limited to the question of whether the findings of fact in the decision are supported by substantial evidence and whether proper legal standards were applied. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be based on the record as a whole. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This deferential standard means that, the question for a reviewing court is not whether the record can support the claimant's alternative view of the evidence, but whether substantial evidence in the record supports the ALJ's conclusions. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)).

## ANALYSIS

**I.    The ALJ's determination that Guridi's drug and alcohol abuse was material to a finding of disability is supported by substantial evidence.**

   **A.    The ALJ did not err in determining the date of Guridi's sobriety.**

Guridi argues the ALJ shortchanged him the amount of time he has been sober and drug free. Mot. at 12. Defendant disagrees. Cross-Mot. at 3-4. The Court notes Guridi does not dispute that

///

the record shows he has a long history of drug and alcohol abuse (Mot. at 11-12).[2] The ALJ determined that Guridi did not stop using drugs and alcohol until July 20, 2005 (AR 20). That conclusion is directly supported by Guridi's own testimony. In response to a question from his attorney, Guridi testified that he had been sober "[s]ince July 20th of last year [2005]" (AR 759). In a follow-up question, Guridi also admitted that he stopped using drugs on July 20, 2005. In response to questioning from the ALJ, Guridi testified that, before July 2005, he had been using marijuana or alcohol "[t]wo or three times a week" whereupon he would consume six to ten beers a day, and that he had been addicted to marijuana (AR 761-63). Guridi's account of his date of sobriety is further supported by a letter written by "Addiction Therapist," Jill Kelly, to Guridi's attorney in April 2006 (AR 686-87). Ms. Kelly indicated that Guridi was last admitted to the Veterans' Administration (VA) drug and alcohol clinic in August 2005, and that he had "remained abstinent from alcohol and other drugs since July 20, 2005" (AR 686). Guridi claims that the ALJ's determination of his date of sobriety "shortchanges the amount of time [he] has been sober and drug-free" (Mot. at 12). Curiously, in support of this assertion, Guridi cites the exact evidence set forth above – his testimony and Ms. Kelly's letter both indicating that July 20, 2005, is the date Guridi became sober.

It is true that, at the hearing, Guridi's attorney asked Guridi if he had any periods of sobriety prior to July 2005, to which Guridi responded that there "had been a few different times when [he] had well over a year of sobriety" (AR 766-67). Guridi, however, has failed to definitively identify these alleged year-long periods of sobriety. Since Guridi's substance abuse started in 1971 (AR 559, 566, 594, 598, 605, 609), the periods of sobriety he testified to could have occurred any time before his alleged onset of disability in January 2002. Guridi failed to be specific in his testimony.

The most specificity Guridi offers is that, in the same letter in which Ms. Kelly gave July 20, 2005 as Guridi's sobriety date, she indicated that he had been "sober and drug-free for about a year starting in 2003" (Mot. at 10; AR 686). Ms. Kelly's exact word were that Guridi "achieved approximately one year of abstinence in 2003/2004" (AR 686). The other evidence Guridi cites in

---

[2] Given the Court's concurrence with the well reasoned analysis advanced by defendant in its pleading, the Court largely adopts its reasoning in this Order.

3

support of his claim that the ALJ erred in assessing his sobriety date is equally imprecise.  On July 23, 2004, someone at the VA indicated that Guridi's alcohol abuse was "approaching one year sobriety" (AR 267); and on July 26, 2004, Ms. Kelly asserted that Guridi had "been abstinent from all substances for 9+ months" (AR 266).  Guridi refers to a period in November 2004, while he was admittedly still using marijuana (AR 634), where Ms. Kelly indicated that Guridi had been clean for "approx. one year" before he had a relapse (AR 633).  Guridi further claims his alleged year of sobriety is supported by Ms. Kelly's assertion in the April 2006 letter that Guridi had tested negative on random toxicology tests and breathalyser tests (AR 686).  A more accurate reading of that statement is that Ms. Kelly was referring to the period after Guridi was readmitted to the VA program in August 2005 (AR 686).  Finally, Guridi refers to evidence of 31 random drug tests as support for his claim that he had been sober longer than July 2005 (Mot. at 10 (citing AR 201, 413-15, 686)).  A check of the test results in the record to which Guridi refers, however, reveal testing for various drugs – not alcohol (AR 201, 413-15).

In summary, Guridi fails to prove that the ALJ committed any error in determining that he had been clean and sober since July 20, 2005.  Guridi's own admission that he had not truly been sober until "July 20, 2005," supported by the counselor Guridi claims has the most comprehensive view of his addiction (Mot. at 12), is stronger evidence than indefinite references to an approximate year of sobriety, and drug tests that did not include alcohol.  The standard of review does not command reversal of the ALJ's findings if there is evidence in the record that can arguably support the claimant's allegations.  Rather, as long as there is substantial evidence in the record supporting the ALJ's conclusion, her decision must be upheld.  *Burch*, 400 F.3d at 679.  The Court AFFIRMS the ALJ's determination of the date of Guridi's sobriety.

**2.   The ALJ did not err in determining that Guridi's drug and alcohol abuse was material to a finding of disability.**

Guridi argues the ALJ erred in finding substance abuse was a material factor to his disability (Mot. at 11-14).  Guridi correctly asserts that benefits may be awarded to a disability claimant who is addicted to drugs or alcohol (*id.* at 12-13 (citing *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2001); *Ball v. Massanari*, 254 F.3d 817 (9th Cir. 2001); 20 C.F.R. §§ 404.1535, 416.935)).  Defendant

///

correctly notes, however, that Guridi fails to show that the ALJ erred by finding that he is not one of those claimants. Cross-Mot. at 5-6.

A claimant is ineligible for disability benefits if his/her drug addiction or alcoholism is a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(c). To determine whether drug addiction or alcoholism are contributing factors material to the determination of disability, the key factor considered is whether the claimant would be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If an ALJ determines that a claimant is disabled and there is evidence of drug and alcohol addiction, he or she must determine if the addiction is material. *Id.* §§ 404.1535(a), 416.935(a). In making this determination, the ALJ considers (1) which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs and alcohol; and (2) whether the claimant's remaining limitations would be disabling. *Id.* §§ 404.1535(b)(2), 416.935(b)(2).

Here, the ALJ determined that, until he became clean and sober on July 20, 2005, Guridi had the residual functional capacity (RFC) to perform less than the full range of sedentary work, which was simple to moderately complex, but he could have only limited contact with co-workers, supervisors and the public, and he had a 20% reduction in his ability to maintain concentration, persistence and pace (AR 20). Relying on vocational expert (VE) testimony, the ALJ determined that this RFC precluded Guridi from performing any of his past work or any other work in the national or local economies (AR 21-23, 806, 812). In accordance with the regulations, however, the ALJ went on to determine that, if Guridi stopped abusing drugs and alcohol, *the mental portion of his RFC improved* to the point where he could occasionally interact with supervisors and frequently interact with co-workers and the public (AR 23). Guridi no longer had the reduction in his ability to concentrate and maintain persistence and pace. Again relying on VE testimony, the ALJ determined that Guridi would not be disabled absent his drug and alcohol abuse because he could perform a significant number of jobs in the national and regional economies (AR 24-25, 806-11).

The ALJ's finding that, absent the drug and alcohol abuse, Guridi would not be disabled is supported by substantial evidence. Again, Guridi's testimony provides significant support for the

1 ALJ's determination.  Guridi testified that, when he stopped using drugs and alcohol, he felt better, 2 was more focused, better able to deal with people and did not make "quick assumptions" (AR 23, 3 763).  Indeed, Guridi testified that, while he was using drug and alcohol, he "had a [] really 4 delusional view of [] []things," but now he "had a better handle on things" (AR 763).  He stated that 5 he spent "more time to learn about situations . . . versus making quick assumptions that gave [him] 6 the wrong answer."  He stated that he was "able to think, to analyze things" and "to actually take a 7 better look at things" since he stopped using drugs and alcohol (AR 763).  Guridi said he 8 "definitely" felt better physically.  He also testified that he "recently [] gained interest in [] possibly 9 doing some activist work about the issues of the Klamath River" (AR 760).  Guridi mischaracterizes 10 this testimony as "a vague self-assessment" (Mot. at 16).  He then asserts that "even if [his own 11 testimony was] true," it was "hardly the kind of evidence that proves someone is able to work."  Not 12 only is the testimony in question rather specific regarding the improvements in Guridi's abilities 13 since stopping drug and alcohol abuse, contrary to Guridi's assertion, the testimony clearly 14 constitutes substantial evidence upon which the ALJ could find that, absent drug and alcohol abuse, 15 Guridi was not mentally disabled.  *See Sousa v. Callahan*, 143 F.3d 1240, 1243-44 (9th Cir. 1998) 16 (testimony relevant to analysis of whether drug and alcohol abuse is material to disability finding).

17 The ALJ also noted that, medical expert, Dr. Dusay observed that 95% of Guridi's 18 psychiatric treatment was related to his substance abuse disorders (AR 784).  Dr. Dusay further 19 noted that, "past the middle of 2005," the record showed little evidence of any separate psychiatric 20 disorder (AR 787-88).  *See Ball*, 245 F.3d at 821-22 (ALJ may rely on medical evidence in 21 determining drug and alcohol abuse was material to disability finding); *Doughty v. Apfel*, 245 1274, 22 1281 (11th Cir. 2001) (same).  Dr. Dusay is *the only medical source to have viewed the record in its* 23 *entirety and hear Guridi's testimony regarding his significant improvement after July 20, 2005*.  He 24 is a relevant specialist, a psychiatrist, and Guridi did not challenge his credentials.  Moreover, Dr. 25 Dusay explained why he came to his conclusions in detail, referencing the treatment and 26 consultative records (AR 783-98).  Accordingly, the ALJ was entitled to rely on Dr. Dusay's 27 testimony.  *Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999) ("we have consistently upheld the 28 Commissioner's rejection of the opinion of a treating or examining physician, based in part on the

testimony of a nontreating, nonexamining medical advisor") (*citing Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989)); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (ALJ's primary reliance on the findings of a medical consultant, was not an abuse of discretion; "[w]e have held that the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings").

Although Guridi attempted to get Dr. Dusay to agree with his belief that the opinion of David Kan, M.D., was consistent with disability, Dr. Dusay refused (AR 790-99). Guridi also claims that Dr. Dusay agreed he had a period of sobriety lasting for one year (Guridi's Brief at 13), yet Dr. Dusay expressly stated that "the exact dates [of sobriety] are not crisp" (AR 794). Further, contrary to Guridi's suggestion that Dr. Dusay was "unaware" of his periods of sobriety because he had not read Ms. Kelly's April 2006 letter (Mot. at 13), Dr. Dusay expressly testified that he was aware of Guridi's periods of abstinence and relapse because he had read the voluminous treatment records (AR 795).

In summary, the ALJ's conclusion that Guridi was not disabled absent his drug and alcohol abuse is supported by substantial evidence. Again, the standard under which this Court must judge the ALJ's findings directs that the ALJ's decision must be upheld if supported by substantial evidence. *Burch*, 400 F.3d at 679. Guridi has presented no reason why this Court should overturn the ALJ's well-supported conclusions. The Court AFFIRMS the ALJ's determination finding that substance abuse was a material factor to Guridi's disability.

**II.   Substantial evidence supports the ALJ's conclusion that Guridi's panic disorder was not disabling.**

Guridi alleges that the opinion of Dr. Kan is consistent with disability (Mot. at 14-19). The record does not support this allegation. The ALJ correctly observed that "none of [Guridi's] treating physicians, including Dr. Kan, have opined the claimant is disabled either mentally, physically, or in combination" (AR 24). The ALJ's observation is supported by substantial evidence. Consultative examiner, Dr. Balestin, examined Guridi and performed psychological testing and did not find disability (AR 170-76). Two state agency reviewing doctors did not find disability (AR 185, 470). Medical expert, Dr. Dusay, did not find disability (AR 785-88). And no one at the VA asserted that

1  Guridi was disabled including Dr. Kan or Ms. Kelly.  In fact, on July 19, 2005, Caroline
2  Kerner, M.D., of the VA, noted that she "could not say that [Guridi] is totally and permanently
3  disabled at this time" (AR 20-21, 614).
4       On September 1, 2005, Dr. Kan acknowledged that Guridi had applied for disability benefits
5  (AR 559).  He apparently believed that Guridi had applied only on the basis of physical
6  impairments, which is incorrect (AR 34, 44, 696, 701).  Dr. Kan asserted that Guridi "qualifies for
7  disability under psychiatric grounds," but claimed that Guridi was "hesitant to apply for this"
8  because he was "stoic."  As noted, however, Guridi did apply for disability benefits on psychiatric
9  grounds; thus, Dr. Kan's qualification is unsupported.  Moreover, Dr. Kan never actually found that
10 Guridi was disabled nor assessed a disability rating as is usually the case when there is a dispute
11 about VA evidence. *McCartey v. Massanari*, 298 F.3d 1072, 1073 (9th Cir. 2002) (claimant assessed
12 an 80% disability rating).  Guridi cites *McCartey*, in support of his claim that the ALJ erred by not
13 acknowledging the "team approach" of the treatment he received at the VA (Mot. at 17).  Nothing in
14 the ALJ's decision, however, indicates that she was unaware of the VA's approach.  In any event, as
15 noted, unlike the claimant in *McCartey* who was found to be considerably disabled by the VA,
16 Guridi was never assessed a VA rating of disability.
17      In further regard to Dr. Kan, the ALJ noted, he "did not find [Guridi] disabled from
18 performing full-time work, only that he had some limitations" (AR 21).  The ALJ's observation is
19 borne out by the record.  In a February 2006 letter, Dr. Kan stated: Guridi's "ability to work
20 full-time on a continuous basis was limited by his symptoms" (AR 674).  In that same letter, Dr. Kan
21 admitted that he had only seen Guridi on three occasions in August and September 2005 (AR 673),
22 and that, because of that limited treatment, it was "difficult to state [Guridi's] current level of
23 impairment" (AR 674).  Dr. Kan went on to assert that Guridi's "treatment records with other
24 psychiatrists seem to indicate that his symptoms have changed very little" since his treatment.  Dr.
25 Kan assessed impairment levels from none to slight to moderate to "moderate to severe" (AR 676).
26 The ALJ found that Guridi had a panic disorder that constituted a severe impairment (AR 18).   She
27 also agreed with Dr. Kan that Guridi's ability to work was "limited by his symptoms," and thus
28 restricted Guridi to work that was "routine to moderately complex" and did not involve more than

occasional contact with supervisors (AR 23).

Guridi's primary challenge to the ALJ's conclusion that his panic disorder was not disabling appears to be based on Global Assessment of Functioning (GAF) scores (Mot. at 14, 17-18). Guridi provides no support for his apparent belief that GAF scores equate with disability, nor could he. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (a GAF score of 40 not disabling); *Morgan*, 169 F.3d at 600 (GAF scores ranging from 45 to 61 did not show that claimant was disabled); *see also* 65 Fed. Reg. 50746, 50764-65 ("The GAF score . . . does not have a direct correlation to the severity of requirements in [SSA's] mental disorders listings" stated in regard to a public comment as to why the GAF scale was not included in the introductory paragraph to the affective disorders listing); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score may assist an ALJ in formulating a claimant's RFC, but is not essential). Guridi uses the GAF score to again attack Dr. Dusay's testimony (Mot. at 18). Dr. Dusay testified that the 48 GAF score Dr. Kan assessed in February 2006 (AR 675), was inconsistent with the doctor's own findings (AR 786). Dr. Dusay also asserted that he taught the GAF scale (AR 798). Although Guridi attempts to minimize Dr. Dusay's GAF expertise (Mot. at 18), the fact that he taught the scale suggests that he had sufficient knowledge to assert that Dr. Kan's findings were inconsistent with such a low GAF score. In conclusion, the Court finds the ALJ's conclusion that Guridi did not have a disabling panic disorder is supported by substantial evidence in the record, and AFFIRMS her determination. *See Burch*, 400 F.3d at 679.

**III.  Substantial evidence supports the ALJ's determination that Guridi was not fully credible.**

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that he did not arbitrarily reject a claimant's subjective testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-47 (9th Cir. 1995). The ALJ provided valid reasons for this Court to conclude that she did not arbitrarily reject Guridi's subjective statements. Her reasons are supported by the evidence.

The ALJ noted that Guridi's activities of daily living were unrestricted (AR 20). Guridi reported that he shopped, cleaned his house and attended to his personal needs; Guridi also did

laundry, cared for his grandmother and made meals (AR 764-65, 769-71). *Morgan*, 169 F.3d at 600 (ALJ properly concluded subjective complaints were exaggerated where claimant fixed meals, did laundry, worked in yard and occasionally cared for a friend's child); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries" were inconsistent with her claim that she was unable to perform all work activity). Guridi's assertion that "one can control the pace and amount of home activity" (Mot. at 19), fails to discredit the ALJ's reliance on his activities. Indeed, Guridi asserted that he took "complete care of [himself] and [felt] very good about it" (AR 85).

The ALJ found Guridi to be less than fully credible because he told consultative examiner Lawrence Leif, M.D., that he could walk as far as he desired (AR 178). *Thomas v. Barnhart*, 278 F.3d 948, 958-59 (9th Cir. 2002) (inconsistencies in Guridi's testimony may be used to discredit subjective complaints); *Macri v. Chater*, 93 F.2d 540, 544 (9th Cir. 1996) (an ALJ is allowed to make inferences "logically flowing from the evidence"). Guridi takes issue with the ALJ's finding because he also told the doctor that he experienced "intermittent" breathing difficulties when walking. Dr. Leif did not, however, recommend that Guridi stop walking; he did note that Guridi continued to smoke, which is obviously related to breathing (AR 178-79).

The ALJ indicated that, during a group therapy session, Guridi said he had a job at Moscone Center, which, as Guridi points out, is incorrect (Mot. at 20; AR 287). At another session, however, Guridi requested a light duty job (AR 218). Accordingly, although the ALJ's citation was incorrect, she was not incorrect in observing that Guridi continued to seek employment. *See Warre v. Comm'r of the Soc. Sec. Adm.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) (Commissioner may cite evidence that provides "additional support" for an ALJ's conclusions in his brief). The ALJ noted that Guridi testified he was more clear, felt better, and was able to function at a better level after he stopped abusing drugs and alcohol as evidence he was not fully credible regarding the extent of his limitations (AR 763). *Macri v. Chater*, 93 F.2d at 544. Guridi again attempts to minimize the significance of this testimony, this time, by asserting that he has a history of denial, a lack of self-awareness and an "uneasiness with regard to mental illness." Whether or not Guridi engages in denial or is not fully self-aware has nothing to do with the fact that he clearly testified he greatly

improved after he became clean and sober in July 2005.

The ALJ also found Guridi lacked full credibility because there is no evidence anyone witnessed his panic attacks despite the alleged frequency (AR 21). *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (ALJ is permitted to consider ordinary techniques for credibility evaluation). Even if this last reason is, as Guridi claims, untrue, the ALJ provided ample alternative reasons for rejecting Guridi's statements of total disability. *Parra*, 481 F.3d at 750-52 (a single credibility factor "is sufficient to discount a claimant's testimony regarding severity of an impairment").

In summary, the ALJ's credibility analysis was sufficient for this Court to determine that she did not arbitrarily reject Claimant's testimony. *Bunnell*, 947 F.3d at 645-47. An ALJ's credibility finding, properly supported, is entitled to deference. *Rollins v. Massanari*, 261 F.3d a853, 856-57 (9th Cir. 2001). Guridi's challenges to the ALJ's conclusion do not demonstrate error. At best, Guridi's challenges reveal that he would have interpreted the evidence differently. Even if the record contained some support for Guridi's subjective statements the ALJ's conclusions must control because they are well-supported. *Bayliss*, 427 F.3d at 1214 ("[i]f the record would support more than one rational interpretation, we defer to the ALJ's decision"). The Court AFFIRMS the ALJ's finding that Guridi was not credible.

## CONCLUSION

Accordingly, the Court DENIES Howard M. Guridi's Motion for Summary Judgment [Docket No. 11], GRANTS defendant's Cross Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment [Docket No. 12], and AFFIRMS defendant's determination of Guridi's residual functional capacity.

IT IS SO ORDERED.

September 30, 2008

_____
Saundra Brown Armstrong
United States District Judge